Mr. Hicks, Mr. Harris, you're up with your opening and you've reserved five minutes for rebuttal. Thank you, sir. May it please the court, I'm David Harris and I'm here representing Blaine McGill in this appeal. BP contracted for Blaine McGill's claims in this matter and in this case doesn't arise out of any cause of action at law. It arises solely out of the causes of action that are created by the settlement agreement. And this is one of the one of the main things and the reason why the judgment of the district court should be reversed is because the district court made a error at law when it said that this was a toxic tort case. In addition to that error, the district court did not make a reasonable assessment of the evidence and abused its discretion when it The district court did not give any, it made just simple mistakes, not simple, but made mistakes of what Dr. Stagner's testimony was, the information upon which Dr. Stagner relied, and misapplied the toxic tort standard to Dr. Stagner's appeals coming out of the BP oil spill and the settlement agreement for business claims. I'm unsure and I believe that this is the first opportunity the court has had to review what are known as back in litigation option class members or it may be, but as you said, I would doubt seriously there's any aspect of this BP litigation that some panel hasn't had in some respect. I will acknowledge I haven't had the BLO, but it's hard for me to fathom that some aspect of this settlement agreement hadn't been litigated somewhere in front of a panel, but I take your point. And Judge Stewart, that's an important point because the settlement agreement is controlled by general maritime law. And it specifically states in the settlement agreement that that's what controls. BP admits that it's but then BP wants to use a, what they call an ordinary toxic tort standard to evaluate Judge Stagner's opinions, which that standard is not imported into the settlement agreement specifically by its terms. This court, and I think it's Lake Eugenie case, which is a BP case, affirmed what has long been held in general maritime law cases is that a maritime contract has to be read specific to its terms on the words that appear on the page. And you don't look outside the terms of that contract. And that's what this is. Well, let's take them in reverse order. First, dealing with, you know, your expert, because I mean, that seemingly is kind of the key to the kingdom for you. You know, with no experts, it's sort of like over. So not backing away from the toxic part. We're going to talk about that. But just your expert was excluded. Judge Girola, you know, excluded him. Season trial judge, you know, basically, you know, we all know what Daubert says and what it is and so forth. But this seemed like, you know, one of those garden variety determinations trial judge got to make under Daubert. Is he qualified? Is his opinion informed by what the cases say? So go to the heart of it. You know, the law is not foreign. Daubert, what he said and so forth, as I gather it, you know, he omitted him because he wasn't armed with some key information as part of it. So, you know, our standard review on that's abuse of discretion. So, you know, hit for the fences on that point. Yes, Judge Stewart, I guess that the. Yes. We've lost you, Mr. Harris. If you if you're looking for a silver bullet. Can you hear me now? You there? Yeah, you were fading, but I think we got you now warning for whatever. If you're looking for a silver bullet case or a silver bullet analysis, I think that's found in Curtis versus M. S. Petroleum. And in that case, no, I'm not really looking for. No, no, not so much cases. I'm just trying to get you to, you know, cut to the chase. You know what the arguments are. And the judge excluded him, saying not that he didn't have credentials, but that he didn't wasn't armed with the essential knowledge about the particulars here. That's unless I'm misunderstanding it. That's the deal here. So I'm just trying to get you to just not abandon your other arguments, but just cut to your home run on why, given an abuse of discretion standard, the district court erred there. That's, you know? Yes, Your Honor. The first the first issue in that respect is that Judge Girola excluded Judge Dr. Stagner, saying that Dr. None of the core exit dispersant cause human harm. Well, that's just not the case. Dr. Stagner relied on more than 25 studies. In his opinion, he relied on 12 studies specifically about dispersants and oil exposure and two particular cases. Um, two studies in which he relied upon, which are cited in the record, demonstrate that these dispersants cause the exact harms that blame McGill is So Judge Girola's assessment of the evidence that none of the studies support Dr. Stagner's opinions is just wrong. Um, Judge Girola then went on to make findings that, um, Dr. Stagner doesn't have any opinions regarding the specific levels of exposure. Now that wraps back into the toxic tort. McGeneral Maritime law aspect of this argument. But even even so, the two studies in which I'm referring to, um, which Dr. Stagner relied upon specifically say that these harms occur at zero to you. You keep fading. You got you have a you showing a connection problem. Can you hear me, Miss Harris? 300 parts per million. Uh, you say I can't hear you, Judge. I don't see why I'm showing a connection problem. Yeah, well, you were freezing for a millisecond there, so I don't know if you're showing you connection is good. Keep rolling. I am, Judge, and I'm I'm sorry. Um, no, it's okay. Yeah, you know, these and and Dr. Stagner relied upon the MSDS from now co from BP. He relied upon information from the Centers for Disease Control. He relied upon all of the exact information that doctor that Judge Girola says doesn't exist. Um, so that is an abuse of express of, um, of discretion. That's the abuse for the assessment of the evidence. Um, Judge Girola makes other findings regarding, um, Dr Dr Stagner's information of exposure. Well, that's that again wraps into the settlement agreement. The settlement agreement in this court may find, although it wasn't briefed, uh, that the settle brief this way. But this court under its de novo review and independent analysis may find that the settlement agreement is ambiguous to the extent that the settlement agreement says exposure need not be proven and may not be litigated. That's in the settlement agreement. But then, uh, it also says that the level and duration of exposure may be litigated and the location of where the, um, that Mr McGill was exposed may be litigated. And that may create an ambiguity. I'm not sure the court can can look at that. But that's not the crux of this of this argument. The crux of the argument is that Judge Girola abused his discretion and making findings to exclude Dr Stagner that are contrary to evidence. They're contrary to his testimony. And it's contrary in a nutshell. So you can go back to your tax, a toxic tour or in a nutshell, you say, when we look in the record and we look at the 12 studies that you've alluded to that Dr Stagner relied on, we're gonna be compelled to the conclusion that the trial judge abused his discretion and excluding Dr Stagner. That's your bottom line. Yes, Your Honor. And that's supported by the breadth of case law under Daubert about, you know, particularly Kumo tire and all of those lines of cases that the Daubert standards are flexible and you have to apply Daubert as the facts present. Okay. All right. Go back to your toxic tort argument. I didn't mean to detour you too long. Well, I think that the toxic tort argument is important or the general maritime law argument is important because Judge Girola made an error in the application of law, which is what informed the rest of his decision. Um, he says that this is a toxic tort case. It's not a toxic tort case. It is a contract case by using a more exacting standard. I'm gonna say the specific in general causation standard which BP has advocated. That's one of the reasons I believe that Judge Girola made his, uh, erroneous assessment of Dr Stagner's opinions and the evidence that informed those opinions. Um, we've cited to a case and and as the court can recognize that the U. S. Constitution grants the federal, the federal courts the ability, the constitutional authority to make general maritime law and law admiralty is one of the very few, uh, lawmaking provisions of the Constitution and Hayes versus A. W. Chesterson, which is a out of district opinion is informative here because Hayes was a multi district litigation. Uh, matter. It was an asbestos case against Northrop Grumman, and we cited it in our materials. But what was important in Hayes is that the court made the same analysis that I'm advocating. It said that in order to for the plaintiff to prove asbestos exposure under maritime law, the product and that and that that contact substantially caused his injuries and that that the exposure to the asbestos had to be real or actual and that it had to be supported by the facts of witness testimony from third parties or testimony from the claimant. And that's exactly what we have here. And that's what the contract says. That's what the kind that the general maritime law is what the contract imports. It doesn't import the toxic tort law as as BP has argued. If BP wanted to, BP could have written whatever it wanted to, considering that it had to be approved by Judge Barbier and and representative counsel. But if they wanted the standard that they advocate now, they could have written it in the contract. But that's not what they put. Thank you. So, uh, your honors, I've up believe that the record demonstrates clearly that the decision of Judge Girola was erroneous for. He missed. He used the wrong legal standard. And I believe that Judge Girola drew the Daubert line just too tight on Dr Stagner's opinion and his and the basis for which Dr Stagner gave his opinion. Dr Stagner is not. He's not a. He's not an unknown, well respected, um, internal medicine pulmonologist and critical care doctor who has vast experience in the areas of, uh, in many different cases on both sides for both claimants and multitudes of his opinions were reliable. We're looking at reliability, not weight and credibility. Um, with that, I see I have a little time left, but unless there's another question, I'll rest on my rebuttal on five minutes. All right, before we shift gears, Kim, are you showing this automation on because the zoom is freezing at points even in your square and it was freezing a bit with Mr Harris and the other images are kind of freezing. So that didn't look like it was all Mr Harris's. So we have a connection issue before, you know, I start the clock on Mr Hicks. Is somebody on on from automation? Yes, Judge Stewart. It appears he was having some network issues where he would get some packet loss when he would freeze, but then it would pick back up from the back end. It looks like it is, um, his connection and it's not affecting us. Well, even in my my image on my big screen, you know, I'll show, for example, Mr Hicks. His image is sort of frozen. Then back up to Kim has to freeze and, you know, just soft weeks clear and Judge King are clear. Well, Southwick is freezing now. So, you know, you know, I'm on the big screen, and so I'm showing this freezing action that isn't typically there. So that's what made me ask about. Is there a connection is shown his own isn't